Filed 7/20/16  P. v. Sanchez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B266486 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. VA134962) |
| MIGUEL ANGEL SANCHEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael A. Cowell, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted defendant Miguel Angel Sanchez of oral copulation of a child under the age of 10 (count 1, Penal Code, § 288.7, subd. (b)[1]) and forcible lewd act upon a child (count 2, § 288, subd. (b)(1).) After factoring in defendant's prior convictions, the court sentenced defendant to 95 years to life—55 years to life on count one, and 40 years on count 2, to run consecutively.

On appeal, defendant argues that his actions were part of a continuous course of conduct, and therefore he should not have been sentenced to consecutive terms. We find that the two acts he committed on the seven-year-old victim were separate and distinct, and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The prosecution presented the following facts. Defendant was a friend of the victim's family. Mother had four children at the time of the incident, E., age 14; J., age 12; B., age 7, and Ju.; age 3.

On the day of the incident, mother was suffering from the effects of a miscarriage about a week earlier. Defendant called mother and offered to help her carry groceries home. Defendant met mother and her four children at the grocery store, and accompanied them on the walk home. They stopped on the way home to purchase a pizza. E. borrowed defendant's bicycle and left to get a haircut. The rest of the group went to a park to eat the pizza. Afterward, mother and defendant walked to mother's home with J., B., and Ju. When they reached the house, mother sat down on the steps in front of the house to watch J. and Ju. play. Defendant asked mother where to put the pizza, and she asked him to put it in the kitchen of the home. Mother also asked seven-year-old B. to take her purse and put it inside.

Inside, defendant beckoned to B., and, thinking he was going to give her more pizza, she went to him in the kitchen. Defendant got on his knees, lifted B.'s skirt, and pulled her underwear to the side. Defendant opened B.'s vagina with his fingers, and

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

licked her vagina three times. B.'s mother called her from the front steps, and B. tried to answer or go to her mother. But Defendant stood, grabbed B. hard around her stomach, pinning her arms to her sides, and stuck his tongue into B.'s mouth. Defendant then told B. that he loved her, gave her a dollar to buy ice cream, and told her not to tell anyone.

Mother testified that after defendant and B. went inside, within about three to five minutes mother noticed that B. had not come back out. She called B. twice, and B. did not respond. Mother got up and went inside, and observed defendant coming out of the kitchen. Defendant told mother earlier that he planned to pick up some water for her, and with mother's permission he took 12-year-old J. with him to get the water.

Mother testified that she observed B. standing in the kitchen, "paralyzed" and "trembling." When mother asked what happened, B. told her. As B. reported this to her mother, she was spitting and wanted to vomit. Mother grabbed three-year-old Ju., her purse, and her phone, and began to run down the street, following defendant and J. Mother called police as she ran. Mother testified that she was afraid defendant might do something to J. Mother spotted defendant with J.; E. was also there with the bicycle, after leaving the nearby barber shop. When defendant saw mother coming, he took the bike from E. and rode away.

Police arrived and took mother and the children to the police station. Police questioned B. alone. Mother took B. to the hospital later that day and she was examined. A forensic nurse took swabs from B.'s mouth and genital areas. One vaginal sample screened positive for saliva and was tested for DNA. The test revealed defendant's DNA in B.'s vaginal sample.

Defendant took the stand in his defense; no other defense witnesses were called. He testified about the events that day, and said he was never inside the house alone with B. On cross-examination, the prosecutor asked defendant if he remembered going back to the family's house and what happened at the house; defendant said yes. The prosecution then played a recording of defendant's interview with police, in which defendant told the investigating officer that he had no memory of any events after the

3

family left the park, and suggested that his memory was impaired because mother had drugged his Gatorade.

The jury found defendant guilty on both counts: oral copulation of a child under the age of 10 for licking B.'s vagina (count 1, Penal Code, § 288.7, subd. (b)), and forcible lewd act upon a child for sticking his tongue in B.'s mouth (count 2, § 288, subd. (b)(1).) Defendant waived a jury trial on his priors, and the court found the priors allegations to be true. On count 1, the court sentenced defendant to 15 years to life, tripled as a third strike, plus 10 years for the prior convictions, for a total of 55 years to life. On count 2, the court sentenced defendant to 10 years, tripled as a third strike, plus 10 years for the prior convictions, for a total of 40 years.

The sentence on count 2 was to run consecutively. Defense counsel objected that the sentences should not run consecutively because under section 654, a defendant may not be punished separately for actions that constitute a single course of conduct but violate more than one statute. The court denied defendant's request, stating, "From the defendant's point of view I could see the argument could be made that this was a continu[ing] course of conduct. [¶] But viewing it from the perspective of the seven-year-old child, these are two distinct and discr[ete] acts. [¶] First of all, she is shocked by the defendant's oral attack of her vagina. Then when her mother calls out to her and she presumably does not respond he suddenly immobilizes her by gripping her and thrusts his tongue into her mouth, from her point of view that is a completely horrific separate act that he commits. [¶] The court does feel that this is a totally distinct act and that the mandatory - - and because of the duress and the restraint was used by the defendant, that the mandatory consecutive term is required."

Defendant timely appealed.

## DISCUSSION

Defendant asserts a single error on appeal. He argues that section 654 requires the sentence on count 2 to be reversed or stayed because his actions with B. were part of an indivisible course of conduct, for which only a single punishment may be imposed. We disagree and affirm.

4

Section 654, subdivision (a), states, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "The statute itself literally applies only where such punishment arises out of multiple statutory violations produced by the 'same act or omission,'" but it "has been extended to cases in which there are several offenses committed during 'a course of conduct deemed to be indivisible in time.' [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).) "It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible." (*Ibid.*) "If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*People v. Perez* (1979) 23 Cal.3d 545, 551 (*Perez*), citing *Neal v. State of California* (1960) 55 Cal.2d 11, 19.)

Defendant argues that the court erred by considering B.'s perspective, rather than defendant's intent and objective, in determining whether section 654 barred consecutive sentences. He argues the case should be reversed and remanded for a new section 654 analysis.

Defendant is correct that the viewpoint of the victim is not the correct section 654 consideration, but remand is not required. The applicability of section 654 to conceded facts is a question of law. (*Harrison*, *supra*, 48 Cal.3d at p. 335.) Defendant has not challenged the facts underlying his convictions. Moreover, "[w]here sentencing error involves the failure to state reasons for making a particular sentencing choice, including the imposition of consecutive terms, reviewing courts have consistently declined to remand cases where doing so would be an idle act that exalts form over substance because it is not reasonably probable the court would impose a different sentence." (*People v. Coelho* (2001) 89 Cal.App.4th 861, 889; see also *People v. Williams* (1996) 46 Cal.App.4th 1767, 1783 [where the record reflects facts that justify the imposition of a consecutive sentence, "an order of remand for a clarified statement of reasons would be no more than an idle act."]; *People v. Sanchez* (1994) 23 Cal.App.4th 1680, 1686

["Where, as in this case, it is improbable that a lower court's sentencing choice would have been different if it had been reminded to state a proper reason, the constitutional provision forbidding reversal for insubstantial errors should apply"].)

Here, ample evidence supports the consecutive sentences. "[S]ection 654 does not preclude separate punishment for multiple sex offenses which, although closely connected in time and part of the same criminal venture, are separate and distinct, and which are not committed as a means of committing any other sex offense, do not facilitate commission of another sex offense, and are not incidental to the commission of another sex offense." (*People v. Castro* (1994) 27 Cal.App.4th 578, 584-585.) "[I]f the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (*Perez*, *supra*, 23 Cal.3d at p. 551.)

Defendant argues that his "manifest intent was to orally copulate [B.]. If he kissed her afterwards, that was merely incidental to the sexual gratification sought by the oral copulation, and was part and parcel of that course of conduct." This argument is not persuasive. By the time defendant put his tongue in B.'s mouth, he had already orally copulated her. His stated intent and objective was already complete, and the "kiss" was an entirely separate violation. Moreover, B. testified that she heard her mother call to her, and when she attempted to answer or go to her mother, defendant stood up from his kneeling position, grabbed B. hard, and put his tongue in her mouth. The evidence therefore suggested that defendant had a separate intent of stopping B. from answering or going to her mother. Neither the oral copulation nor the purported kiss "was the means of achieving the other, facilitated commission of the other, or was incidental to the other." (*People v. Marks* (1986) 184 Cal.App.3d 458, 466; see also *People v. Coleman* (1989) 48 Cal.3d 112, 163 [assault of victim following completion of robbery was not incidental to the robbery].)

6

In addition, defendant's intent to obtain sexual gratification by violating B. in multiple ways does not render the multiple violations an indivisible course of conduct. In *Perez*, *supra*, 23 Cal.3d 545, the Supreme Court held that the objective of obtaining sexual gratification "is much too broad and amorphous to determine the applicability of section 654. Assertion of a sole intent and objective to achieve sexual gratification is akin to an assertion of a desire for wealth as the sole intent and objective in committing a series of separate thefts. To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to insure that a defendant's punishment will be commensurate with his culpability." (*Perez*, *supra*, 23 Cal.3d at p. 552.)

Moreover, "the purpose of section 654 is to ensure that a defendant's punishment will be commensurate with his culpability." (*People v. Correa* (2012) 54 Cal.4th 331, 341.) "A defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act." (*Perez, supra,* 23 Cal.3d at p. 553.) In addition, a "defendant should also not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his sexually assaultive behavior." (*People v. Harrison*, *supra*, 48 Cal.3d at p. 338.) When defendant had obtained his stated goal of orally copulating B. and they were interrupted by mother's call, defendant could have walked away. Instead, he stood up, pinned B.'s arms to her sides, and assaulted her again by sticking his tongue into her mouth. Section 654 does not bar separate punishment for gratuitous acts that are unnecessary to accomplish the original offense and committed against helpless and unresisting victims. (*People v. Nguyen* (1988) 204 Cal.App.3d 181, 190; *People v. Cleveland* (2001) 87 Cal.App.4th 263, 272.)

7

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


WILLHITE, Acting P. J.


MANELLA, J.